## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ZOE MARSH-LEIGH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 25 C 1293 |
| | ) | |
| DAVID MOORE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

MATTHEW F. KENNELLY, District Judge:

Zoe Marsh-Leigh has sued the City of Chicago, several Chicago aldermen, the Council's Sergeant-at-Arms, and Toni Preckwinkle, the President of the Cook County Board of Commissioners, under 42 U.S.C. § 1983. After both the City and County defendants filed motions to dismiss Marsh-Leigh's amended complaint for failure to state a claim, Marsh-Leigh moved to file a second amended complaint, adding some allegations as well as a second plaintiff, Michael Young-Bey. The defendants have objected, arguing that even as amended, Marsh-Leigh has failed to state any viable legal claims. They have also objected to the addition of Young-Bey's claims. For the reasons stated below, the Court grants Marsh-Leigh's motion to amend but dismisses Young-Bey's claims for improper joinder and dismisses some, but not all, of the claims in the second amended complaint.

### Background

The Court takes the factual background from the proposed second amended

complaint, the factual allegations of which the Court takes as true for purposes of the present motion.

Marsh-Leigh is an "active civic participant who regularly attends public meetings of the Chicago City Council and its committees and the Cook County Board of Commissioners[.]" 2d Am. Compl. ¶ 13 She states that in 2023, her advocacy related to the City's demolition of her family's property without notice or a hearing.

## A.    Allegations against the City and City officials

At a City Council meeting in 2023, Marsh-Leigh "publicly confronted Alderman David Moore and insisted that he meet with her family to address their concerns." *Id.* ¶ 15. Moore then blocked her from "his official social media accounts." *Id.* ¶ 16.

On November 14, 2023, Marsh-Leigh submitted a request to make a public comment at a meeting of the City Council's Committee on Health and Human Relations, chaired by Alderwoman Rosanna Rodriguez-Sanchez. Marsh-Leigh believes she was the first person to submit a request to speak. About fifteen other speakers were called to speak, but she was not permitted to do so. Marsh-Leigh protested, was issued a warning by the Council's Sergeant-at-Arms, Alvin Starks, and after she protested further, was removed from the meeting. At Starks's instance, Marsh-Leigh says, Chicago Police Department officers arrested her and charged her with criminal trespass. Starks allegedly obtained a court order to prohibit Marsh-Leigh from attending Council meetings pending resolution of her case.

After her case was resolved, Marsh-Leigh says, she attended Council meetings for eleven months "almost daily without incident[.]" *Id.* ¶ 31.

On January 9, 2025, Marsh-Leigh spoke at a meeting of the Committee on

Zoning, Landmarks, and Building Standards. As the meeting continued, Marsh-Leigh exited, and Alderman Moore followed her. They argued in the hallway, and Moore summoned the police. Several days later, Marsh-Leigh was barred from entering a Council meeting. Starks gave her a letter explaining that because of her "aggressive, harassing" conduct towards an unnamed alderperson outside a Committee on Zoning meeting on January 9, 2025, she was prohibited from attending in-person Council or committee meetings and from entering the second and third floors of City Hall until April 14, 2025, for three months. *Id.*, Ex. A. The letter stated that she could provide phone-in public comment. Marsh-Leigh alleges that Alderwoman Michelle Harris, Chair of the Rules Committee, upheld the limitation on her in-person access.

Citing these incidents, Marsh-Leigh asserted, in her first amended complaint, claims under the First and Fourteenth Amendments against various combinations of Starks, Harris, and Rodriguez-Sanchez, as well as a claim against the City for an alleged custom or policy of failing to ensure that City officials protect First Amendment and other constitutional rights while maintaining order at public meetings. Marsh-Leigh did not name Moore as a defendant in her first amended complaint. Marsh-Leigh also asserted three claims against Cook County Board President Toni Preckwinkle for a separate incident that the Court will address a bit later. As indicated earlier, all the defendants moved to dismiss the amended complaint for failure to state a claim.

In her proposed second amended complaint, Marsh-Leigh includes more detail about Moore's Facebook page; describes a group of pro-Palestinian protestors who she says disrupted a Council meeting but were not detained or restrained; and elaborates on the City defendants' involvement in the relevant events. She also adds a contention

that speakers at the November 14, 2023 meeting were not randomly selected, and she states that she pled guilty to disorderly conduct after her arrest on that date. She asserts, in the second amended complaint, the following claims against the City defendants:

- a claim under the First Amendment for discrimination based on her viewpoint and exclusion from a public forum, against Moore, Starks, Harris, and Rodriguez-Sanchez (Count 1);

- a claim under the First Amendment for retaliation, against Moore, Starks, and Harris (Count 3);

- a claim under the Fourteenth Amendment alleging a procedural due process violation against Starks and Harris (Count 7);

- a claim under the Fourteenth Amendment alleging an equal protection violation against Starks and Harris (Count 9); and

- a claim (along with Young-Bey) against the City alleging an unconstitutional policy (Count 12).

In addition to these claims, the second amended complaint includes claims by Marsh-Leigh against Preckwinkle (Counts 5 , 6, and 11). The Court will discuss the factual underpinning for these claims in the next section.

The proposed second amended complaint, as indicated, also includes claims on behalf of a new plaintiff, Michael Young-Bey, against three new defendants, Mayor Brandon Johnson, Vice Mayor Walter Burnett Jr., and Alderman Greg Mitchell, as well as Starks and Harris. Young-Bey alleges that he "publicly criticized City officials and agencies for discriminatory and corrupt practices related to housing access" at Council

meetings.  *Id.* ¶ 51.  In October 2023, Young-Bey contends, Alderman Mitchell struck him as he sought to record the alderman outside the Council chambers.  Young-Bey was criminally charged, but charges were dismissed.  He alleges that Mitchell was neither investigated nor disciplined by the City.

In December 2024, Young-Bey gave a public comment before the Council.  His remarks included the statement, "[t]hat red look [sic] nice on you, Ms. [Alderwoman] Coleman.  You always look like a stripper."  *Id.* ¶ 53.  Mayor Johnson directed officials to turn off the microphone, and Young-Bey was not permitted to speak further.  The next day, Starks gave Young-Bey a letter barring him from entering Council or committee meetings and portions of City Hall until March 2025 because his comment violated the City's Rules of Conduct for Public Meetings, including Rule 58, as it was "profane, vulgar, demeaning, harassing, and directed towards others."  *Id.*, Ex. B.  The letter notified Young-Bey that he could provide phone-in public comment.  Young-Bey alleges that he was removed from a subsequent Council meeting at the instance of Burnett.

In the second amended complaint, Young-Bey seeks to assert claims under the First Amendment and for violations of due process and equal protection against various combinations of Mayor Johnson, Starks, Harris, and Burnett (counts 2, 4, 8, and 10). Young-Bey also is named as a second plaintiff on Marsh-Leigh's claim against the City (count 12).

## B.    Allegations against Preckwinkle

Marsh-Leigh says that she pursued her advocacy before the Cook County Board of Commissioners as well.  At a May 16, 2024 Board meeting, she "voiced her objections to her family's property being taken and criticized" President Preckwinkle's

5

"inaction[.]" *Id.* ¶ 44  While criticizing Preckwinkle, she says, she called Preckwinkle a "house n****r." *Id.* ¶ 45.  Marsh-Leigh says she was removed from the meeting and detained for about one hour and that at two subsequent Board meetings, she was not called on to speak after submitting timely requests.  Marsh-Leigh adds that Preckwinkle was aware of her presence at these two Board meetings and that Preckwinkle exercised supervisory authority over speaker selection.  She further alleges that at these two meetings, Preckwinkle treated her differently from another individual who "expressed strong or controversial views" but was permitted to speak.  *Id.*, count 11 ¶ 10.  Marsh-Leigh asserts claims against Preckwinkle for violations of the First Amendment and equal protection (Counts 5, 6, and 11).

## Discussion

A district court should freely grant leave to amend a complaint "when justice so requires," Fed. R. Civ. P. 15(a), "but leave may be denied on account of undue delay, prejudice, bad faith or dilatory motives, futility, or judicial economy." *Chi. Joe's Tea Room, LLC v. Village of Broadview*, 94 F.4th 588, 607 (7th Cir. 2024).  An amendment is futile if it "restat[es] the same facts using different language, reassert[s] claims previously determined, fail[s] to state a valid theory of liability, and [is unable] to survive a motion to dismiss." *Garcia v. City of Chicago*, 24 F.3d 966, 970 (7th Cir. 1994) (internal citations omitted).  A district court may deny leave to amend when the proposed amendments do not "push the original claim into the realm of plausibility." *O'Boyle v. Real Time Resols., Inc.*, 910 F.3d 338, 348 (7th Cir. 2018).  Plausible allegations allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell*

6

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

There is no basis in this case to deny leave to amend based on undue delay, unfair prejudice, or bad faith. Although the addition of a new plaintiff and several new defendants would "drive the proceedings in a new direction," *Allen v. Brown Advisory, LLC*, 41 F.4th 843, 853 (7th Cir. 2022), this is not an "[e]leventh hour addition[]" that would "require new rounds of discovery" or cause undue prejudice to defendants. *Campbell v. Ingersoll Milling Mach. Co.*, 893 F.2d 925, 927 (7th Cir. 1990). At this point, discovery has not even begun.

The addition of Young-Bey and several new defendants would, however, run afoul of the standards for joinder. Plaintiffs may be joined in one action when plaintiffs assert a right to relief "jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1). Marsh-Leigh and Young-Bey's claims involve some common questions of law and fact, including the liability of the City under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), and the Council's procedures for speaker selection. But their claims do not arise out of the same transaction or occurrence, as the underlying events took place on different dates and with largely different defendants.

Nor do the claims arise from the same "series of transactions or occurrences[,]" a separate basis for joinder under Rule 20. *Id.* This phrase "comprehend[s] a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Mosley v. Gen. Motors Corp.,* 497 F.2d 1330, 1333 (8th Cir. 1974). Young-Bey's claims concern a physical altercation with Mitchell,

termination of his speaking time by Mayor Johnson, and a bar on his in-person attendance at Council meetings.  Marsh-Leigh, by contrast, had several confrontations with Alderman Moore.  She alleges that she was barred from his official social media account and from in-person attendance at Council meetings after another interaction with Moore.  Her claims also concern three County Board meetings and a City Council meeting at which she was not called on to speak.  Though both Young-Bey and Marsh-Leigh assert claims related to the City Council and the First Amendment (among other causes of action), that is where the similarities end.  Their claims arise from distinct events involving largely distinct actors and therefore lack "substantial evidentiary overlap[.]"  *ReceiverShip Mgmt., Inc. v. A.J. Corso & Assocs., Inc.*, No. 19 C 01385, 2021 WL 1222897, at *11 (N.D. Ill. Mar. 31, 2021); *see Dorsey v. Varga*, 55 F.4th 1094, 1103–04 (7th Cir. 2022).  In assessing whether to join claims alleging *Monell* liability, courts have "come out on both sides," but simply alleging *Monell* liability does not create a logical relationship among claims by different parties.  *Lozada v. City of Chicago*, No. 10 C 1019, 2010 WL 3487952, at *3 (N.D. Ill. Aug. 30, 2010) (collecting cases).  Joinder here is unwarranted.

**A.    Claims against the City and City officials**

The Court turns next to the proposed amendments on Marsh-Leigh's claims. The City defendants argue that Marsh-Leigh's proposed second amended complaint fails to state a claim upon which relief may be granted.  The Court addresses each claim in turn.

### 1.    First Amendment - viewpoint discrimination

Marsh-Leigh alleges in count 1 of the second amended complaint that she

suffered viewpoint discrimination and unconstitutional exclusion from a public forum. She has, rather confusingly, lumped several distinct alleged deprivations into a single claim. The Court, however, will disaggregate the claim(s) for purposes of analysis. Marsh-Leigh alleges that:

- Moore blocked her from his Facebook page after she criticized his conduct, 2d Am. Compl., count 1 ¶ 4;
- Rodriguez-Sanchez excluded her from public comment on November 14, 2023 even though she met the requirements to participate, *id.*, count 1 ¶ 5;
- after she protested this exclusion, Starks caused her to be removed from the meeting and arrested, *id.*, count 1 ¶ 7;
- Starks sought and obtained a court order barring her from City Council meetings until her criminal case was over (which appears to have happened on February 7, 2024), *id.*; and
- on January 14, 2025, she was barred from attending City Council meetings for three months, by Starks at the instance of Harris, as the result of a complaint by Moore following a "brief hallway interaction" between them on January 9, 2025, *id.*, count 1 ¶ 8.

The Court will address each alleged deprivation separately.

### a. Claim relating to social media

The Court begins with Marsh-Leigh's claim that she was inappropriately blocked from Moore's Facebook account based on her criticism of the alderman. To state a First Amendment claim based on exclusion from a government official's social media account, a plaintiff must allege state action under 42 U.S.C. § 1983. In *Lindke v. Freed*,

601 U.S. 187 (2024), the Supreme Court concluded that "a public official's social-media activity constitutes state action under § 1983 only if the official (1) possessed actual authority to speak on the State's behalf, and (2) purported to exercise that authority when he spoke on social media." *Id.* at 198. Apparent authority does not qualify as state action. *See id.* As with other section 1983 claims, actual authority derives from a "statute, ordinance, regulation, custom, or usage[,]" and the relevant question is whether an official has general authority to speak on behalf of the state rather than explicit authority to speak on social media. *Id.* at 200 (citing 42 U.S.C. § 1983). "Because blocking operated on a page-wide basis, a court would have to consider whether [Moore] had engaged in state action with respect to any post on which [Marsh-Leigh] wished to comment." *Id.* at 204.

Marsh-Leigh's claim fails to meet the first of *Lindke*'s two requirements. She alleges only the conclusion that Moore "exercises actual and apparent authority as a city official" through his Facebook page. 2d Am. Compl. ¶ 3. An alderman has actual authority to engage with citizens on public matters within his purview. But Marsh-Leigh points to no statute, ordinance, regulation, custom, or usage suggesting that Moore exercised actual authority to *speak on behalf of the City* on any post on which she wished to comment. Marsh-Leigh notes that Moore's page contained his official title and updated constituents on City events, services, and public meetings. But in *Lindke*, the Court stated that a "Facebook page [that] looks and functions like an outlet for city updates and citizen concerns" does not, without more, demonstrate state action; "state authority must be real, not a mirage," and the "alleged censorship must be connected to speech on a matter within [the defendant's] bailiwick." *Lindke*, 601 U.S. at 199. Marsh-

Leigh has not adequately alleged that Moore had actual authority from the City to speak on its behalf on his Facebook page.  She therefore fails to state a viable claim.

### b. Claims relating to City Council meetings

Marsh-Leigh's other viewpoint discrimination claims all involve exclusions of one sort or another from City Council meetings.  Preliminarily, the Court addresses the First Amendment status of Council meetings.  "The First Amendment permits government to regulate use of its property in certain instances depending on the nature of that property."  *Surita v. Hyde*, 665 F.3d 860, 869 (7th Cir. 2011).  Courts characterize "traditional public forums" as public property such as streets or parks that have "immemorially been held in trust for the use of the public" and "used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Krasno v. Mnookin*, 148 F.4th 465, 483 (7th Cir. 2025) (quoting *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 45 (1983)).  Designated public forums are "locations or channels of communication that the government opens up for use by the public for expressive activity."  *Surita*, 665 F.3d at 869 (holding that audience time at city council meeting during which any member of the public could speak for up to three minutes on any subject was a designated public forum).  In both traditional and designated public forums, "the government may impose reasonable time, place, and manner restrictions on private speech, but restrictions based on content must satisfy strict scrutiny, and those based on viewpoint are prohibited."  *Krasno*, 148 F.4th at 483 (quoting *Minn. Voters All. v. Mansky*, 585 U.S. 1, 11 (2018)).

Under strict scrutiny, content-based regulations must be "necessary to serve a compelling state interest" and "narrowly drawn to achieve that end."  *Surita*, 665 F.3d at

870 (quoting *Perry*, 460 U.S. at 45). By contrast, in limited public forums, where the government limits discussion to certain groups or topics, and nonpublic forums, which are not primarily employed for First Amendment purposes, government regulation of speech "need only be reasonable and view-point-neutral[.]" *Krasno*, 148 F.4th at 483. It is likely that the public comment portions of Council meetings constitute designated public forums, *Surita*, 665 F.3d at 869, but in both designated and limited public forums, viewpoint discrimination is prohibited.

### i.     November 2023 exclusion from public comment

Marsh-Leigh alleges that she submitted the first speaker slip at a November 14, 2023 committee meeting but was not called on to speak. The City defendants argue that this was because a lottery was used to select the speakers and that a published procedure of the Council establishes this. *See* City Defs.' Resp. to Pl.'s Mot. to Amend at 9–10. They seek dismissal on this basis.

This argument asks too much of a court considering a motion to dismiss for failure to state a claim. Marsh-Leigh alleges that she "was reasonably led to expect that she would be called to speak" after she submitted her slip and that only "she and another African American man known for dissenting views" were excluded from public comment. 2d Am. Compl., count 1 ¶ 6. The Court is required to take these allegations as true and draw reasonable inferences in Marsh-Leigh's favor. The City's motion effectively asks the Court to do the opposite. This slice of Count 1, asserted against Rodriguez-Sanchez, survives.

### ii.     Removal from November 2023 meeting

The City defendants contend that Marsh-Leigh was removed from the November

2023 meeting because she was disruptive.  *See* City Defs.' Resp. to Pl.'s Mot. to Amend at 9.  Marsh-Leigh later pled guilty to a charge of disorderly conduct arising from her conduct at the committee meeting on that date.  2d Am. Compl., count 1 ¶ 7 n.2; City Defs.' Mot. to Dismiss First Am. Compl., Ex. A (criminal complaint and disposition sheet).  The City contends that Marsh-Leigh's guilty plea bars her claims arising from her removal from the November 14 meeting.  *See* City Defs.' Resp. to Pl.'s Mot. to Amend. at 13.

Although the City employs the terms "res judicata" and "claim preclusion," its filings cite cases discussing issue preclusion.  Issue preclusion is governed by "the law of the jurisdiction where the judgment is rendered."  *Nathan v. Tenna Corp.*, 560 F.2d 761, 763 (7th Cir. 1977).  Under Illinois law, issue preclusion has four elements:

> (1) the party against whom the estoppel is asserted was a party to the prior adjudication, (2) the issues which form the basis of the estoppel were actually litigated and decided on the merits in the prior suit, (3) the resolution of the particular issue was necessary to the court's judgments, and (4) those issues are identical to issues raised in the subsequent suit.

*Wells v. Coker*, 707 F.3d 756, 761 (7th Cir. 2013).  "[A] criminal conviction based upon a guilty plea conclusively establishes for purposes of a subsequent civil proceeding that the defendant engaged in the criminal act for which he was convicted."  *Nathan*, 560 F.2d at 763.

The Court may appropriately consider the criminal charge against Marsh-Leigh and her guilty plea in deciding the present motion.  The analysis the Court undertakes in assessing "futility" on a motion to amend is effectively the same as the inquiry on a motion to dismiss under Rule 12(b)(6), and "[o]n a motion to dismiss, a court may consider, in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are

13

referred to in it, and information that is properly subject to judicial notice." *Yash Venture Holdings, LLC v. Moca Fin., Inc.*, 116 F.4th 651, 659 n.11 (7th Cir. 2024) (quoting *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013)). Marsh-Leigh references the criminal charge and her guilty plea in her second amended complaint, so the documents related to that, including the charge itself and the disposition, are appropriately considered. These materials reflect that Marsh-Leigh pled guilty to a charge of disorderly conduct alleging that she "knowingly and intentionally became loud and unruly [sic] profane language during a committee meeting after repeatedly refrain [sic] in such an unreasonable manner as to alarm and disturb the meeting and provoke a breach of the peace." City Defs.' Mot. to Dismiss First Am. Compl., Ex. A (dkt. 45-1), ECF p. 9 of 18.

The Court agrees with the City defendants that Marsh-Leigh's admitted conduct precludes her from contending that her removal from the meeting ran afoul of the First Amendment. Marsh-Leigh admitted guilt on a charge that alleged she had "disturb[ed]" the committee meeting by becoming "loud and unruly" and using "profane language" during the meeting. *Id.* It is true that Marsh-Leigh did not admit in her guilty plea that her inappropriate conduct and disruption of the meeting was the reason she was removed. But there is an obvious connection between the two points, and there is also no question that disruptive conduct justifies a person's removal in this situation, even in an otherwise public forum. *See, e.g., Milestone v. City of Monroe*, 665 F.3d 774, 783–84 (7th Cir. 2011). The Court is not required to put on blinders in addressing the question of futility. The Court concludes that given the specifics of the charge to which Marsh-Leigh pled guilty, she is precluded from challenging on First Amendment grounds

14

the appropriateness of her removal from the meeting.

### iii. Court-imposed restriction on attendance during pendency of criminal disorderly conduct case

Marsh-Leigh alleges that a state court judge—presumably as part of bail conditions in the disorderly conduct case—barred her from attending Council and committee meetings while the criminal case was pending. Marsh-Leigh makes no argument that the judge's restriction violated the First Amendment, nor does she explain how this court-imposed restriction can be laid at the feet of any defendants for purposes of liability under section 1983. She cannot maintain a claim against any of the defendants based on this particular deprivation.

### iv. January 2025 three-month ban on attending Council and committee meetings

Marsh-Leigh also challenges the prohibition, imposed after her interaction with Alderman Moore after a January 9, 2025 committee meeting, that barred her, for three months, from attending Council and committee meetings and from entering the second and third floors of City Hall. The City defendants do not contend that this claim is precluded by Marsh-Leigh's guilty plea regarding the September 2023 incident. They do appear to argue that the ban was justified by Marsh-Leigh's use of racial epithets, *see* City Defs.' Resp. to Pl.'s Mot. to Amend at 11, but for this they reference only Marsh-Leigh's actions at a May 2024 *County Board* meeting. There is nothing in Marsh-Leigh's second amended complaint, however, that connects these two events or that otherwise admits to a basis justifying the January 2025 exclusion.

The City defendants also argue that the restriction does not give rise to a viable First Amendment claim because it did not actually limit Marsh-Leigh's speech, as she

remained able to provide phone-in comment at Council meetings.  There is some support for the proposition that a restriction of this sort passes muster, *see Vega v. Chi. Bd. of Ed.*, 338 F. Supp. 3d 806, 814 (N.D. Ill. 2018), but there is also authority generally disapproving prospective bans on attending public meetings.  *See, e.g.*, *Reza v. Pearce*, 806 F.3d 497, 506 (9th Cir. 2015) (explaining that Ninth Circuit law does not support "indefinitely ban[ning] an individual from a government building based on a single disruption of a hearing"); *Walsh v. Enge*, 154 F. Supp. 3d 1113, 1118 (D. Or. 2015) ("[N]o matter how many meetings of a city council a person disrupts, he or she does not forfeit or lose the future ability to exercise constitutional rights and may not be prospectively barred from attending future meetings.").  The Court does not have a sufficient factual basis on the present record to make a determination regarding the adequacy of the alternative means of access that was offered to Marsh-Leigh.  This slice of her First Amendment claim also survives, against Harris and Starks.  The Court reaches a different conclusion regarding Moore:  Marsh-Leigh alleges only that after their interaction in the hallway on January 9, 2025, Moore complained about her to Harris, who then ordered the ban.  There is no allegation that Moore importuned or even asked Harris to ban Marsh-Leigh, and that is not a plausible inference from the current allegations.  This is an insufficient allegation of personal involvement with respect to Moore.  *See, e.g., Est. of Perry v. Wenzel*, 872 F.3d 439, 459 (7th Cir. 2017) (liability under section 1983 requires personal involvement in the deprivation).

### 2.    First Amendment - retaliation

Marsh-Leigh's First Amendment retaliation claim involves the same incidents referenced in count 1.  A prima facie case of unlawful retaliation requires a plaintiff to show that  "(1) he engaged in activity protected by the First Amendment; (2) he suffered

a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (cleaned up). The burden then shifts to the defendant to establish that the action would have been taken anyway, and finally, the plaintiff must prove that the defendant's explanation is pretextual. *Milliman v. County of McHenry*, 893 F.3d 422, 430–31 (7th Cir. 2018).

Marsh-Leigh plausibly alleges each element of a retaliation claim against the remaining defendants regarding her contentions that she was improperly denied the opportunity to speak on November 14, 2023 and that she was improperly barred from access to Council and committee meetings for three months in January 2025.[1] First, she states that she engaged in (and was well-known for) political speech related to the conduct of Council members and the City's demolition of her family's property. That speech is clearly protected by the First Amendment. *See, e.g.*, *Connick v. Myers*, 461 U.S. 138, 145 (1983) ("[S]peech on public issues occupies the highest rung of the hierarchy of First Amendment values[.].") (internal quotation marks omitted).

Second, Marsh-Leigh plausibly alleges that she suffered a deprivation that was likely to deter future First Amendment activity. The question is "whether the alleged conduct by the defendants would likely deter a person of ordinary firmness from continuing to engage in protected activity." *FKFJ, Inc. v. Village of Worth*, 11 F.4th 574,

---

[1] Any retaliation claims regarding Marsh-Leigh's removal on November 14, 2023 or the court-imposed restriction on her attendance during the pendency of her criminal case are futile for the same reasons discussed with respect to her viewpoint discrimination claims on these points.

585 (7th Cir. 2021). The Court cannot say at this juncture that a three-month bar on speaking in person to the Council or entering two floors of City Hall would not chill the speech of an ordinary person, even if the person remained able to comment remotely. The same is true of the allegedly retaliatory denial of speaking time at the November 14, 2023 City Council meeting.

Finally, Marsh-Leigh plausibly alleges causation. But-for causation is not required; Marsh-Leigh need only allege that her protected conduct was a cause of the defendants' actions. *Surita*, 665 F.3d at 874. A plaintiff may rely on circumstantial evidence, such as "suspicious timing" or "behavior or comments directed at other" speakers when the protected activity and adverse action are at least minimally related. *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012) (quoting *Long v. Teachers' Ret. Sys. of Ill.,* 585 F.3d 344, 350 (7th Cir. 2009)). Marsh-Leigh plausibly alleges that the City defendants were motivated by her repeated political speech.

### 3. Procedural due process

Marsh-Leigh contends that her procedural due process rights were violated in connection with her January 2025 exclusion for three months from Council meetings and the second and third floors of City Hall. She alleges that she was not provided notice, a meaningful explanation of the ban, or an opportunity to be heard. The City responds that Marsh-Leigh was not deprived of any liberty interest because she could attend Council meetings remotely, and in any case, she failed to avail herself of state-provided remedies.

"The Due Process Clause imposes basic procedural obligations on the government—in most cases, prior notice and a meaningful opportunity to be heard—

before it deprives a person of life, liberty, or property." *Manley v. L.*, 889 F.3d 885, 890 (7th Cir. 2018). A plaintiff "must allege the 'deprivation of a protected interest' and 'insufficient procedural protections surrounding that deprivation.'" *Martin v. Haling*, 94 F.4th 667, 671 (7th Cir. 2024) (quoting *Michalowicz v. Village of Bedford Park*, 528 F.3d 530, 534 (7th Cir. 2008)).

Though "a plaintiff need not exhaust her remedies through state agencies or courts before bringing a § 1983 claim," *Tucker v. City of Chicago*, 907 F.3d 487, 492 (7th Cir. 2018), a due process violation "is not complete unless and until the State fails to provide due process." *Zinermon v. Burch*, 494 U.S. 113, 126 (1990). Thus a court must ask "what process the State provided" under the "statutory or administrative procedure of effecting the deprivation" and "whether [that process] was constitutionally adequate." *Id.* Accordingly, "a plaintiff who foregoes her right to pursue post-deprivation remedies available under state law faces a high hurdle in establishing a due process violation." *Tucker*, 907 F.3d at 492. *See also Simmons v. Gillespie*, 712 F.3d 1041, 1044 (7th Cir. 2013) ("The due process clause does not permit a litigant to disdain his opportunities under state law and then demand that the federal judiciary supply a remedy.").

Post-deprivation remedies may suffice in circumstances involving the "necessity of quick action by the State or the impracticality of providing any predeprivation process,'" *Zinermon*, 494 U.S. at 128 (quoting *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982)), or where "the potential length or severity of the deprivation does not indicate a likelihood of serious loss and where the [post-deprivation] procedures . . . are sufficiently reliable to minimize the risk of erroneous determination[.]" *Id.* (quoting

*Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 19 (1978)).

Marsh-Leigh indisputably failed to avail herself of adequate state-provided post-deprivation remedies under the Illinois Open Meetings Act, 5 Ill. Comp. Stat. 120/1-120/7.5.  Section 2.06(g) of the Act provides that "[a]ny person shall be permitted an opportunity to address public officials under the rules established and recorded by the public body." *Id.* 120/2.06(g); *see* Ill. Att'y Gen., Public Access Op. 23-013 (Sep. 13, 2023) (holding that section 2.06(g) was violated by imposing public comment restrictions not established in recorded rules).  The Act establishes that "any person . . . may bring a civil action" in state court for noncompliance that "has occurred or is about to occur[,]" and permits courts to grant relief including "mandamus requiring that a meeting be open to the public, [and] granting an injunction against future violations of this Act[.]"  5. Ill. Comp. Stat. 120/3(a), (c).

Marsh-Leigh asserts that post-deprivation remedies are relevant only to random and unauthorized acts by individual government agents and that the letter was neither random nor unauthorized.  Yet the Seventh Circuit has been clear that post-deprivation remedies always "go directly to the question [of] whether a plaintiff has been afforded due process of law." *Tucker*, 907 F.3d at 492.  At least one other court has held that post-deprivation process satisfied due process where an individual repeatedly disrupted public meetings, making it impractical for the defendant to anticipate disruptions and provide pre-deprivation process.  *See Dyer v. Atlanta Indep. Sch. Sys.*, 852 F. App'x 397, 403 (11th Cir. 2021) (upholding grant of summary judgment to defendant on procedural due process claim as an adequate post-deprivation remedy existed under the Georgia Open Meetings Act).  Based on the remedies provided under the Open

Meetings Acts, Marsh-Leigh does not plausibly allege a procedural due process violation.

### 4.    Equal protection

Marsh-Leigh asserts a violation of her right to equal protection on the basis that other speakers who were similarly disruptive were not subject to removal, arrest, or bans from City Hall.

"The typical equal protection case involves discrimination by race, national origin or sex[,]" but equal protection "also prohibits the singling out of a person for different treatment for no rational reason."  *Swanson v. City of Chetek*, 719 F.3d 780, 783 (7th Cir. 2013).  This latter type of equal protection claim is called a "class-of-one" claim and succeeds only "on some rare occasions[.]"  *Indiana Land Tr. #3082 v. Hammond Redevelopment Comm'n*, 107 F.4th 693, 698 (7th Cir. 2024).  To state a claim, a plaintiff must allege intentional differential treatment from otherwise similarly situated parties and the absence of a rational basis.  *Id.*  A court does not require a plaintiff to identify a similarly situated comparator in the complaint.  *Id.*  But at the pleading stage, "a class-of-one plaintiff must, to prevail, negative any reasonably conceivable state of facts that could provide a rational basis for the classification."  *Miller v. City of Monona*, 784 F.3d 1113, 1121 (7th Cir. 2015) (quoting *Scherr v. City of Chicago,* 757 F.3d 593, 598 (7th Cir. 2014)).  The claim fails if "a conceivable rational basis for the difference in treatment exists."  *Waukegan Potawatomi Casino, LLC v. City of Waukegan*, 128 F.4th 871, 878 (7th Cir. 2025) (quoting *Hammond Redevelopment*, 107 F.4th at 698).  This, of course, is a higher threshold to clear than for a First Amendment claim involving exclusion from a limited or designated public forum.

21

Marsh-Leigh's equal protection claim does not satisfy this requirement to the extent it is based on her exclusion from the November 14, 2023 meeting. Her complaint and the other materials appropriately considered on the current motion provide a rational basis for the claimed differential treatment: Marsh-Leigh's *admitted* disorderly conduct, for which she pled guilty to a criminal offense. And based on her complaint, the pro-Palestinian group that she cites as have disrupted a City Council meeting (not a committee meeting) left of its own volition, which likewise is a rational basis for differential treatment.

But the complaint does not identify a rational basis for *also* subjecting Marsh-Leigh, and not others, to a three-month exclusion from City Council meetings. And Marsh-Leigh has otherwise pleaded the elements of a claim for denial of equal protection based on this decision by the City defendants. Marsh-Leigh's equal protection claim survives to the extent it is based on this particular deprivation.

### 5. Municipal liability

Marsh-Leigh seeks to hold the City liable under *Monell* on her claims regarding "exclusion . . . from public meetings," 2d Am. Compl. count 12 ¶ 3, which at this point is limited to the January 2025 three-month prohibition. *Monell* requires a plaintiff claiming municipal liability to plausibly allege a violation of a federal right, "trace[d] . . . to some municipal action (i.e., a 'policy or custom'), such that the challenged conduct is 'properly attributable to the municipality itself.'" *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021) (quoting *First Midwest Bank ex rel. LaPorta v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021)). The plaintiff must also plausibly allege that the municipal action reflects municipal fault (in other words, deliberate indifference to the

constitutional deprivation) and that it was the "moving force" of the violation of rights. *Id.* (quoting *LaPorta*, 988 F.3d at 987).

A plaintiff has three routes to prove municipal action. She may allege that her federal rights were violated under an express municipal policy, a well-settled custom or practice, or the decision of an official with final policymaking authority. *Dean*, 18 F.4th 214 at 235. Final policymaking authority requires the "authority to adopt rules for the conduct of government" rather than mere decision-making power. *Killinger v. Johnson*, 389 F.3d 765, 771 (7th Cir. 2004) (quoting *Rasche v. Village of Beecher,* 336 F.3d 588, 599 (7th Cir. 2003)). Final policymaking authority derives from state or local law, including customs and practices. *Id.* at 771–72. Municipal liability applies when a final policymaking authority acts herself or ratifies another official's decision and its basis. *Id.*

 Marsh-Leigh alleges that the ban from future meetings was imposed by Starks and ratified by Harris, who served as President Pro Tempore of the City Council "with supervisory authority over security and enforcement." 2d Am. Compl., count 12 ¶ 4. This alone would not satisfy *Monell*, as Marsh-Leigh suggests only that Harris was Starks' higher up. But Marsh-Leigh's proposed amendment asserts that Harris exercised her "final authority over Council security and meeting access" to bar Marsh-Leigh from in-person attendance at Council meetings for three months and claims that Harris was a final policymaker. *Id.*, count 1 ¶ 10. Read together, Marsh-Leigh sufficiently alleges that Harris was a final policymaking authority who directed or ratified her bar from in-person attendance at City Council meetings. It is plausible that the President Pro Tempore would be the final policymaking authority for the City, and not merely an official with decision-making authority, over issues of security and decorum in

23

the Council.  The Court concludes that this amendment would not be futile.

**B.    Claims against Preckwinkle**

**1.    First Amendment - viewpoint discrimination**

Marsh-Leigh contends that Cook County Board President Preckwinkle discriminated against her based on her viewpoint and unconstitutionally excluded her from a public forum when she was removed from the May 16, 2024, meeting and was not selected to speak at two subsequent County Board meetings.  Marsh-Leigh also notes that she was detained for one hour after her removal from the May 16 meeting. *Id.* ¶ 47.  The Court does not consider Marsh-Leigh's detention here or in the retaliation claim because she does not allege that Preckwinkle caused, ordered, or was even aware of it, as required for personal involvement.  *See Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017).

As summarized by Preckwinkle in her motion to dismiss the first amended complaint, here is what Marsh-Leigh alleges happened at the May 16, 2024 meeting:

> Plaintiff's comments questioned whether Defendant did "not care for black people property ownership;" asked how much money she received for "selling out your own people;" implied she was involved in the corruption undertaken by Alderman Ed Burke, and referred to Defendant's son, daughter-in-law, and grandkids. Plaintiff's only mention of any official actions of Defendant were vague: Plaintiff asked why Defendant "let[s] these white developers with the help of Cook County and city employees play with our deeds;" and why Defendant "continue[s] to turn a blind eye when it comes to our black property owned issues [sic]." *Id.*  Plaintiff was allowed to speak for one minute and was only interrupted when she asked Defendant, "Why are you a house n****r?"

Def. Preckwinkle's Mot. to Dismiss First Am. Compl. at 2–3 (record citations omitted; last word in quote modified).  Both Marsh-Leigh and Preckwinkle are Black women.

Preckwinkle contends Marsh-Leigh used "fighting words" unprotected by the First Amendment when she called Preckwinkle a "house n****r."  Fighting words are "those

which by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Chaplinsky v. New Hampshire,* 315 U.S. 568, 572 (1942). "[T]he 'inflict-injury' subset of the fighting-words definition has never stood on its own" and fighting words must have a tendency to incite an immediate breach of peace. *Purtell v. Mason*, 527 F.3d 615, 625 (7th Cir. 2008). And, as Marsh-Leigh argues, a court must consider "the actual circumstances surrounding [the] expression," *Texas v. Johnson*, 491 U.S. 397, 409 (1989), to determine whether it is "directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Id.* (quoting *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969)).

Marsh-Leigh used a vile and disgusting epithet that was abusive, insulting, and completely inappropriate. But that is not sufficient for it to constitute "fighting words." The term was part of a series of comments by Marsh-Leigh that "expressed her views on Defendant's handling of issues affecting Black property owners . . . [including] critiquing Defendant Preckwinkle's perceived alignment with institutional actors harming Black property owners." 2d Am. Compl., count 5 ¶¶ 2–3. A reasonable factfinder, considering the slur in the context in which it was used, could conclude that it did not amount to, nor was it likely to produce, imminent lawless action. *See, e.g.*, *United States v. Bartow*, 997 F.3d 203, 211 (4th Cir. 2021) (holding that use of the n-word was not fighting words and vacating conviction for its use where the record lacked evidence that the speaker "employed other profanity, repeated the vile slur, or issued any kind of threat, let alone one dripping with racism").

Preckwinkle next argues that Board meetings are limited public forums and that viewpoint-neutral limitations on speech are valid. Def. Preckwinkle's Resp. to Mot. for

Leave to File 2d Am. Compl. at 3. At this stage, the Court cannot weigh the evidence and determine whether all the challenged acts attributed to Preckwinkle were based on Marsh-Leigh's violation of Board rules or on her viewpoint. Setting aside Marsh-Leigh's removal from the May 16 meeting, Marsh-Leigh alleges that she was the only person not called upon to give testimony at two subsequent Board meetings, including one meeting five months after her use of the n-word. That is sufficient to support, at least for pleadings purposes, a claim of viewpoint discrimination. In particular, Preckwinkle's submissions do not provide authority supporting an indefinite restriction on First Amendment-protected activity, even in a limited public forum, based on a single incident of misconduct, even if that incident is as reprehensible as this one was. Marsh-Leigh has plausibly alleged that the restrictions were imposed because of protected speech.

### 2. First Amendment - retaliation

Marsh-Leigh contends that Preckwinkle retaliated against her for her speech at the May 16 meeting by removing her and not calling on her to speak at two subsequent Board meetings. To sustain her claim, she must allege that she engaged in protected speech, suffered adverse conduct that would deter future First Amendment activity, and the deprivation was motivated at least in part by her protected speech. *Douglas*, 964 F.3d at 646.

Marsh-Leigh plausibly alleges each element. First, she engaged in protected speech. Though she employed a disgusting racial epithet, she plausibly asserts that she did so in the course of protected political speech. Second, her removal from the May 16 meeting and preclusion from speaking at two subsequent meetings are deprivations sufficiently likely to deter future First Amendment activity. Finally, though it

26

seems likely that Preckwinkle was motivated by Marsh-Leigh's possible violation of Board rules, Marsh-Leigh plausibly contends that Preckwinkle was motivated, at least in part, by the fact that she expressed displeasure with Preckwinkle's actions related to Black property owners. The Court cannot decide the motivation issue on an undeveloped record. The Court concludes that this amendment would not be futile.

### 3. Equal protection

Marsh-Leigh also asserts a class-of-one equal protection claim against Preckwinkle. As discussed earlier, a plaintiff must exclude "any reasonably conceivable state of facts that could provide a rational basis for the classification." *Miller*, 784 F.3d at 1121 (quoting *Scherr,* 757 F.3d at 598). Again, this is a different standard from the one that applies to a First Amendment claim. Marsh-Leigh fails to negate the presence of a rational basis for any difference in treatment, namely, her use of the n-word. She cannot pursue this claim via her second amended complaint.

### C. Qualified immunity

The individual City defendants argue that they are entitled to qualified immunity because there is no clearly established law holding unlawful a three-month ban from in-person attendance at Council meetings while an individual may still comment remotely.

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Reed v. Palmer*, 906 F.3d 540, 546 (7th Cir. 2018) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Qualified immunity rests on two fact-dependent inquiries: whether an official violated a statutory or constitutional right and whether that right was clearly established at the time

27

of the violation. *Id.* at 546–47. "Because a qualified immunity defense so closely depends on the facts of the case, a complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds." *Id.* at 548. And a motion to amend likewise is adjudicated based on the complaint alone. *Id.* "[I]mmunity may depend on particular facts that a plaintiff need not plead to state a claim." *Hanson v. LeVan*, 967 F.3d 584, 589 (7th Cir. 2020). Courts do not require plaintiffs to anticipate and overcome qualified immunity defenses in a complaint. *Reed*, 906 F.3d at 548–49.

The individual City defendants claim qualified immunity with respect to Marsh-Leigh's claims about blocking her from Moore's Facebook account and the three-month ban during which she was allowed remote access—not her other claims. *See* City Defs.' Resp. to Pl.'s Mot. to Amend at 13–14; City Defs.' Mot. to Dismiss First Am. Compl. at 13. The first of these claims has been dismissed, so the qualified immunity argument on that is moot. On the second claim, the qualified immunity argument appears to be limited to Count 1—the viewpoint discrimination claim—as opposed to Counts 2 and 11—the retaliation and equal protection claims. That aside, as the Court indicated in declining to dismiss the three-month-ban claims, the factual record is insufficiently clear regarding the adequacy of the alternative access that was offered to Marsh-Leigh. This makes dismissal under Rule 12(b)(6) based on qualified immunity inappropriate. The same is true of the question of the defendants' motivation, on which further factual development is needed.

Preckwinkle argues that the law is unclear regarding the ability to exclude a person from a limited public forum for using an inappropriate slur like "n****r." But this assumes that is why Marsh-Leigh was removed from the meeting, and it also assumes

that is why she was barred from later meetings. On this, too, further factual development is needed to fairly present the qualified immunity issue asserted by Preckwinkle.

<strong>Conclusion</strong>

The Court has concluded that Marsh-Leigh may appropriately pursue certain of the claims asserted in her proposed second amended complaint, but not others, and that she may not appropriately add Young-Bey as a plaintiff. From a case management standpoint, the Court concludes that the best course is to grant Marsh-Leigh's motion for leave to file a second amended complaint [dkt. no. 52] and: (a) dismiss for improper joinder all claims brought by plaintiff Michael Young-Bey (counts 2, 4, 8, 10, and part of 12) and strike the allegations relating to Young-Bey (paragraphs 51–58); (b) dismiss Marsh-Leigh's First Amendment claims (counts 1 and 3) to the extent they are based on the ban from Moore's social media accounts and removal from the November 2023 meeting; (c) dismiss Marsh-Leigh's due process claim against the City defendants (count 7) and her equal protection claim against defendant Preckwinkle (count 11); and (d) dismiss Marsh-Leigh's equal protection claim against the City defendants to the extent it is based on any deprivation other than the three-month exclusion (part of count 9). The following claims in the second amended complaint may proceed: the viewpoint discrimination claim against the City defendants as it pertains to the November 2023 exclusion from public comment and the three-month ban placed on Marsh-Leigh (parts of count 1); the retaliation claim against the City defendants based on these same alleged deprivations (parts of count 3); the equal protection claim against the City defendants as it pertains to the three-month ban; the viewpoint discrimination and

29

retaliation claims against Preckwinkle (counts 5 and 6), and the municipal liability claim against the City to the extent it is based on the remaining parts of counts 1, 3, and 9 (count 12). Marsh-Leigh is directed to file the second amended complaint as a separate docket entry. Defendants are directed to answer the remaining claims by January 23, 2026. The previously-filed motions to dismiss are terminated as moot [dkt. nos. 45, 46, and 47]. Rule 26(a)(1) disclosures are also to be made by January 23, 2026. The parties are directed to confer regarding a discovery and pretrial schedule and are to file a joint status report with a proposed schedule by January 30, 2026. A telephonic status hearing is set for February 6, 2026 at 9:05 a.m., using call-in number 650-479-3207, access code 2305-915-8729.

Date: December 23, 2025

_____
MATTHEW F. KENNELLY
United States District Judge